NORTHEAST INSURANCE COMPANY

v.

CONCORD GENERAL MUTUAL INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued May 5, 1983.

Decided June 30, 1983.

Monaghan, Leahy, Hochadel & Libby, Christopher C. Dinan (orally), Kevin Libby, Joan M. Kidman, Joseph M. Hochadel, Portland, for plaintiff.

Berman, Simmons, Laskoff & Goldberg, P.A., William D. Robitzek (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

GODFREY, Justice.

On November 29, 1976, Gary Anderson was injured in an automobile accident. Appellant Concord General Mutual Insurance Company ("Concord") had issued to Gary's father, Charles Anderson, an insurance policy with uninsured motorist provisions that covered the injuries. The question presented by this appeal is whether the Concord policy was in force at the time of the accident.

Early in November, 1976, Charles owed Concord a premium of $11.69 for coverage from August 17, 1976, to December 1, 1976. Concord sent Charles Anderson a letter warning him to pay the $11.69 premium by November 18, 1976, or Concord "would or could" cancel the insurance. On November 18, Concord mailed him a second letter, stating that the policy was canceled, effective November 28 at noon. On November 19, before receiving the second letter, Charles tendered the premium due to Beverly A. Clough of the Clough Insurance Agency. Ms. Clough, Concord's authorized agent, accepted the payment on Concord's behalf and forwarded it to Concord's home office.

Charles Anderson received the cancellation notice sometime after Clough accepted the premium. Because he was under the impression that his Concord coverage would lapse on November 28, he arranged with the Clough Agency on November 26 for coverage by appellee North East Insurance Company ("North East"), to become effective on November 28. He obtained the North East policy, which covers Gary's injuries, to avoid a lapse; it was not his purpose to have double coverage. Sometime after the November 29 accident, Concord returned "the premium or a portion thereof" to the Clough Agency for return to Charles.

Gary brought an action against North East on his father's policy. North East then brought a complaint for a declaratory judgment against Concord, Gary, and Charles, which has become the subject of this appeal. The case came before the Superior Court, Cumberland County, on cross-motions for summary judgment by Concord and North East. The court entered judgment in favor of North East, finding that both insurers' policies covered Gary for the November 29, 1976, accident and that each was liable up to its policy limit for a pro rata share of payment for Gary's injuries. Assuming for the sake of argument that Concord's cancellation of its policy was effective, the court decided that the cancellation was waived by the Clough Agency's acceptance of the late premium. We affirm the judgment.[1]

By accepting late payment of premiums without question, an insurer waives any right to consider the policy terminated or canceled for lack of timely payment. *Palmer v. Newport Trust Co.*, 245 A.2d 438, 440 (Me.1968) (dictum); *Bruzas v. Peerless Casualty Co.*, 111 Me. 308, 89 A. 199 (1913). The fact that Concord's agent, rather than Concord itself, accepted the premium does not change the result. Acceptance of an overdue premium by an agent having authority to do so continues the policy in full force. W. Vance, *Handbook on the Law of Insurance* 489 (3d ed. 1951). Concord does not and could not dispute that under 24–A M.R.S.A. § 2422(2) the Clough Agency is deemed to have such authority as a matter of law.[2] Instead, Concord argues that its

---

1. North East contends that Concord's purported cancellation was ineffective under the applicable statute governing cancellation of automobile insurance. Our disposition of the case makes it unnecessary to reach that issue.

2. 24–A M.R.S.A. § 2422(2) (1974) provides, in pertinent part, as follows:

The authorized agent of an insurer shall be regarded as in the place of the insurer in all respects regarding any insurance effected by him. . . .

*See Sinclair v. Home Indem. Co.*, 159 Me. 367, 371–72, 193 A.2d 177, 179 (1963) (dictum); *Bilodeau v. Narrangansett Mut. Fire Ins. Co.*, 116 Me. 355, 102 A. 42 (1917); *LeBlanc v.*

coverage was either waived by the policyholder or that the policy was rescinded by mutual assent. Neither theory is applicable.

■ A waiver is a voluntary relinquishment of some known right, benefit or advantage that the party would have enjoyed were it not for the waiver. *Rosen v. German Alliance Insurance Co.*, 106 Me. 229, 232, 76 A. 688, 689 (1909). Cancellation of an insurance policy can be effected by mutual agreement, like the rescission of any other contract. *Bard v. Fireman's Insurance Co.*, 108 Me. 506, 508, 81 A. 870, 871 (1911).

■ Concord is not helped by the fact that the policyholder obtained a substitute North East policy, in effect at the time of the accident. By the weight of modern authority, the mere fact that a policyholder obtains new insurance with the intention that it take the place of existing insurance does not, by itself, terminate the original insurance. 6A J. Appleman & J. Appleman, *Insurance Law & Practice* § 4225, at 649–50 (rev. ed. 1972); *e.g.*, *Glens Falls Insurance Co. v. Founders Insurance Co.*, 209 Cal.App.2d 157, 25 Cal.Rptr. 753 (1962); *Millbank Mutual Insurance Co. v. State Farm Fire & Casualty Co.*, 294 N.W.2d 426 (S.D.1980); *see* Annot., 14 A.L.R.4th 781 (1982).

■ There is a more fundamental reason for rejecting Concord's argument: Concord has failed to meet its burden of proving that the policyholder, as the party to be charged with waiver or rescission of the policy, acted with knowledge of the material facts. *Bragg v. Royal Insurance Co.*, 115 Me. 196, 98 A. 632 (1916); *Bard*, 108 Me. at 510, 81 A. at 871; *Rosen*, 106 Me. at 232, 76 A. at 689. *See Pitner v. Federal Crop Insurance Corp.*, 94 Idaho 496, 491 P.2d 1268 (1971); *Dill v. Lumbermen's Mutual Insurance Co.*, 213 S.C. 593, 50 S.E.2d 923 (1948); *Fox v. Bankers Life & Casualty Co.*, 61 Standard Ins. Co., 114 Me. 6, 95 A. 284 (1915); *Frye v. Equitable Life Assurance Soc.*, 111 Me.

Wash.2d 636, 379 P.2d 724 (1963). Nothing in the record tends to show that Charles Anderson was aware of his statutory right to keep the Concord policy in force. *See Bragg*, 115 Me. at 199, 98 A. at 633. When Concord's second letter arrived, containing the cancellation notice, Anderson was in full compliance with the terms of the policy, Concord's agent having waived the lateness of his payment. Under the applicable statute, Concord could not unilaterally cancel the policy. *See* 24–A M.R.S.A. § 2914 (1974), *amended by* P.L. 1977, ch. 403, § 2, and P.L. 1979, ch. 347, §§ 1, 2. The cancellation notice conveyed the false impression that cancellation was an accomplished fact. The fact that Anderson took out a second policy, without any purpose of obtaining duplicate coverage, just a few days after he had paid the Concord premium is strong evidence that he thought his Concord coverage would end on November 28 and hence that he acted with an erroneous impression of his legal rights.

■ Earlier decisions of this Court control the present case. Those decisions make clear that a policyholder who receives a notice of immediate cancellation, unaware that the cancellation is invalid, does not give effective assent to rescission by asking the insurer's agent to procure other insurance. *Rosen; Bard.*

Other arguments advanced on this appeal do not require discussion.

The entry is:

Judgment affirmed.

All concurring.